Good morning, gentlemen. For each of you, you're going to have 15 minutes. For the appellant, if you want to reserve some time, you can tell me how much you want to reserve. Understand that we have read the briefs, so you don't have to restate all of the facts to us, take your time on arguing your cases. That is a recording device, not a microphone, so please keep your voices up loud and clear. All right? And if you could identify yourself for the record and what party you're representing. Good morning, Your Honors. My name is Adam O'Leary. I represent the plaintiff appellant, BMO Bank. All right. And I'm Daniel A. Edelman, and I represent defendant affilee James Zbroszczyk. And I'm going to tell both of you, you have very soft voices, and so I'd like you to at least speak up as loud as I'm speaking because we want to make sure that we are able to record your arguments. So if you want to listen to them later, go ahead. All right? Yes, Judge. Thank you. Okay. And Counsel, how much time are you going to reserve for rebuttal? Five minutes, please. Okay. That's fine. And you can have a seat, and whenever you're ready, Counsel, you can begin. Thank you, Your Honors. I think part of the reason my voice is low, I'm a little nervous because I'm very used to arguing by Zoom now, so interviewing people is a little nerve-wracking. Nonetheless, this is a mortgage foreclosure case. The date of default alleged in the complaint was February 22, 2018. That was the maturity date of the loan. So the maturity date is the date at which all indebtedness comes due under the note. The mortgage owner filed a 619 motion to dismiss based on the allegation the statute of limitations had expired. So, Counsel, you are relying on the maturity date as the date the statute begins to run, correct? Correct. That's correct. So you're relying on a 10-year statute of limitations and not a five-year statute, correct? That is correct. Okay. Yes. Because it kind of boils down to that, doesn't it? It does, although I would say this is kind of preemptive to something that I assumed was going to come a little bit later, but the issue of which statute of limitations applies was not actually flushed out or ruled upon by the trial court. So I don't – that wasn't the basis for the trial court's decision, so I don't think it's really – Well, it made a determination that it was a 10-year and that it started in 2013, that it started in August, I think, 26th or something like that of 2013. That's what the trial court – Right. I think the trial court ruled in its initial dismissal of the complaint that, quote, the court measures the running of the statute from August 26th, 2013. So, I mean, implied in there, obviously, is – That there was an analysis done on what was the appropriate statute of limitations and what date the trial court believes it started to run. Perhaps, although I think the defendant's argument on that was it doesn't matter because it was outside the 10-year. So if it's outside the 10-year, it's definitely outside the 5-year. So, I mean, my client takes the position that it really wasn't analyzed. It was just, well, we're going to do a 10-year because it defeats both. So I have a question regarding the August 2022 letter.  Isn't it logical to read the letter implying that the past due date was actually August 2013? It says past due, total amount past due, and it gives the entire amount of the loan. So doesn't that suggest that all of the indebtedness is due as of August 2013? My client's position, the only way that this letter is read reasonably and rationally is that the principal past due that's listed is as of the date of the letter. I'm sorry, as of the date of what? The date of the letter, which is August 22nd of 2022. Why would they make reference to the August 2013 in the letter if it's dated from the date that you're indicating? Right. Well, those are, again, my client's position is those are two different things. So the loan was due for August 26, 2013, but it doesn't say here explicitly that what was due back in August 26, 2013 was the 99,000. It doesn't say that. And so the issue is the only way that the 99,973.28 was unequivocally due back on August 26, 2013 was if the loan had been accelerated. That's the only way. That's the only way. I agree with you there. And so my client's position is in the absence of any evidence of acceleration, which there isn't in this record. And I'm going to ask, you say there isn't any, but you use August 26, 2013 and say this is the amount due. But from August of 13 to, I can't remember the date, in 18, five years would have passed, and you don't put any interest on there, any penalty on there, any cost, anything. So it sounds like in reading this that there was an acceleration, and you said this, we want everything as of the August 13th date, because you put no fees or anything on it after that. I know it's not specifically said, but in fact, it appears as if it's accelerated. But are you referring to this August 22, 2022 letter, Your Honor? Yes. Because it doesn't say, it says, no, I'm looking, I don't have it, but I wrote down, no finance charges, no past due charges, no unpaid late charges. We're just saying we want $99,973.28. I agree. That's what the bank wants on August 22, 2022. That's what they want. So you're relying on the first sentence of the August 22, 2022 letter that says payment has now been received on your above reference account, has not, I'm sorry, been received on your above reference account and is now past due? And is now past due. The first sentence of August 22, 2022 says it's now past due, doesn't it? So you're saying that on August 22, 2022, that is when they first say it's past due. That's difficult to answer because on the date of this letter, the loan matured four years previously. So when the note matured on the August, sorry, the February 22, 2018 date, acceleration is off the table because everything is due by the terms of the note on that date. So anything in this letter that says past due, not past due, amounts due, I think it's a little red herring-ish because you don't need to accelerate anymore. Like if we're trying to treat this letter on August 22, 2022 as acceleration, the loan can't be accelerated anymore because it's over. The maturity date's come and gone. I have a question. You referred to the document as a note. Opposing counsel says it's not a note. Does that make any difference to us here whether it's a note or not? I don't think so. So it's a good question. I don't think this is a UCC case. I don't think the analysis matters. The terms of the, what do you want to call it? You want to call it a debt instrument? You want to call it an equity line? I don't think it matters because the terms of the debt instrument govern. Whatever it says in the note, I think the law says we need to follow. So if you want to call it a note, you want to call it an equity line, you want to call it a debt instrument, I don't think it matters. I don't think it changes the analysis. Well, what does the loan, what does the debt instrument say? It says on February 22, 2018, you owe everything that hasn't been paid. And that was the default date alleged in the complaint. The Manglenet case from the Northern District of Illinois fine Illinois law says, calls it a HECLA in that case. And I think of it as a HELOC, a home equity line of credit, right? And in that case, they call it a HECLA. I think it's the same dang thing, home equity line of credit, right? So how do we distinguish the Manglenet case, I'm sure I'm butchering the pronunciation, as to its holding that a five-year statute limitation applies? Your Honor, I mean, it's tough. That one, that one's tough. But what the Court did in that case, as I recall, was it likened a HELOC to a credit card. I mean, that was the analysis, and I don't think that's right. In all banks, their position is going to be that is not right because this HELOC is nothing like a credit card. And I can articulate or at least try to why that's the case, but that's my answer to your question is it's, that's what the Court did there. This is kind of like a credit card because you can pay a little bit, draw it down, and then, or sorry, you can pay it down and then draw some more. Isn't that kind of how a credit card works? Well, yeah, but the origination of that loan is completely different. I mean, 100 percent different, and that's why I don't think that a HELOC can be considered an oral agreement. Okay, not to belabor this point, but getting back to the note, all right, the complaint that your client filed was to sue for mortgage foreclosure, right? And then there's reference in the complaint as to the note, which means that if this is just a UCC action, as you inferred, then you'd be in law provision, right? You wouldn't necessarily be in chancery. But since you're seeking foreclosure here, we are in law applicable to those types of matters applied here as well, correct? Yes. Okay. Yes. So just to kind of probably belabor my client's position is that in the absence, again, our position is there's no evidence in the record of an acceleration. So if you're going to accelerate a debt, you do it by letter or you do it by lawsuit. There's no evidence in this record that that happened. This, you can't accelerate something after the fact. So there's no, there's no evidence in the record that the loan back in 2013 was actually accelerated. So without that, even if it's true that the August 26, 2013 was the oldest missed installment, all that means is that the bank could have sued for that missed installment. So if that missed installment had been $300, you owe $300 this month, and that installment was missed, then the bank could have sued for $300. The only way it could have sued for the full amount of the loan is to accelerate. And again, there's no evidence that back in 2013 the loan was accelerated. So the next step in the analysis is, okay, well, if it wasn't accelerated, then isn't the law in Illinois that each missed installment thereafter is a new default that creates a new cause of action and a new statute of limitations triggering? I hope the answer is yes, and that's my client's position, is that, okay, well, you missed August 2013. You missed all the next ones, however many there were, until the note matured on February 22nd of 2018. So the statute of limitations is not new to them, but we're going to choose this one at the end because we hadn't accelerated the note prior. Now, I think the defendant argues that there are no installments under HELOC, and I think that's wrong because the loan, the debt instrument of the HELOC explicitly says in it that there are 119 payments to be made. I don't know how that can be characterized as anything but an installment. And then there's a final payment of 100, sorry, the 120th payment, which is the final installment. Like I said, those are installments. They might not have a fixed amount, but they're still installments. And yes, sometimes the installment might be zero in theory. It's still an installment. You just don't have to pay anything that month. So I think the law supports the fact that all of those missed installments created causes of action. The bank didn't sue under any of them. They sued under the final one on February 22nd of 2018. But what do you say to the argument that this kind of gets converted to an oral argument or an oral, sorry, an oral agreement because there's no set amount for repayment. There can't be because this is a credit line. You could take $20 or you could take $100,000 throughout the term, the 10-year term. So because of that missing term, it's converted to an oral. What do you say to that argument? Meaning that it then carries a five-year statute of limitations. Yes. So I'm going to answer that with an anecdote and then maybe if you don't like my anecdote, maybe a different answer. I had a very similar case in DuPage County in front of Judge Barron. I know obviously it's not precedential, but I think it's informative to try to answer your Honor's question. Almost identical debt instrument and an identical argument from the defendant in that case. We came to hearing on the defendant's 619 motion and the judge looked at defense counsel and held the note up and asked the attorney, how can you stand there and argue that this is not a writing? And that was the judge's analysis. It was like, why are we even talking about oral anything and converting something to oral when you've got this? This clearly is a writing. It's got all the terms in it. It's signed. You read it. You signed it. That's a writing. And it suggests that because there's some law out there that interprets something as oral agreement because we don't know the borrower, you read this, it says right in there how this note's going to work, and you signed it. This is a writing. The fact that, you know, oh, I don't know exactly how much my monthly payment's going to be each month until I get my statement, that doesn't take this away from being a writing. So clearly that's not evidence or precedent to anything, but that's my client's position in line with what Judge Barron had ruled in that case. So that's my answer to your question. I have another question from something you said earlier. I just wanted to make sure I understood what you said, that if a loan basically has passed its due date, the last date when everything is supposed to be due, then it can't be self-accelerated. Is that what you said? I just wanted to make sure. Yes, because so when a note or debt instrument matures, it says in the debt instrument that all outstanding indebtedness is due in owing. So everything, all the principal, all the accrued interest, all fees, it's all one giant pot that you have to pay. That is the same as acceleration. So earlier on, like four years ago, four years prior, for example, if a bank wanted to seek all principal and all interest and all fees, they have to accelerate the debt to bring it all due. The maturity date has the same effect by its own terms. So everything is due on maturity. There's nothing to accelerate, I guess is a better way to answer. You can't accelerate because there's nothing to accelerate. Does that answer Your Honor's question? Yes. But I'm just thinking, so if it accelerated February, I can't remember the month, but 2018, if that's the acceleration date and you filed a suit in 2023, you were saying you have the 10-year statute, so you are within. I just, yeah, okay. That's correct. And again, I mean, I understand the 5 or 10 year. I would just like to impress upon Your Honor is that that really wasn't ruled upon. It was kind of impliedly ruled upon. I understand that it really wasn't an issue. That's not the right expression. It really wasn't ruled upon by the trial court. So the basis or the primary basis for this appeal was the trial court's ruling that the special limitations was triggered on August 26, 2013. It's our client's position that that was error, that it runs from February 22, 2018. And we're not going to do that. And we would ask that it be remanded on that issue. If then it becomes another fight over, well, what is the proper statute of limitations to apply to this fact pattern, then I suppose we can hash it out. I just don't think that that particular issue was flushed out properly in the trial court. Do you think we can do that? Well, we can determine what is the date. Well, whether it's accelerated or not, then we can determine what statute of limitations applies without going back to the trial court. Yeah. I'm not going to stand here and tell you that you can't do something for yourself. So if we remand it, where do we remand it to? Because there's contention here of whether or not this is actually a matter that goes back to Chancery or it goes back to the law division. I mean, I think it would have to go, I mean, it would still be a, it's still a foreclosure. So it would have to go back to the foreclosure court. But in foreclosure, you need a note in order to proceed. Right. And the case law is very clear on all that. So if this isn't a note, the line of credit agreement is not a note, then it doesn't belong in the case. I don't think that, Your Honor, the law supports that. That's like saying that a HELOC can never be secured by a mortgage because it can never be sued upon. I don't think there's any support for that. And I think that's why I'm trying to argue at least there's no distinction in this case between a note and a HELOC or, frankly, any other debt instrument. I don't think it's material to the analysis. I have one other question. So when BMO took the servicing back, I think it was July 2022 or somewhere around there, they sent a letter to the defendant here basically indicating that BMO cannot sue the co-op on the debt because the debt is 2-0. So should we take that into consideration as well? It was July 28th, the second letter. Your Honor, if there's a letter from my client that says that, that should be considered an error by my client in sending that, it's not evidentiary in any manner and it shouldn't preclude them from being able to enforce their rights under the debt instrument and the mortgage because primarily there's no evidence, I'm hoping, that the defendant relied on that statement. In other words, the defendant wouldn't have changed his position on that statement because it was so far after the fact anyway. So far after the default, alleged default. We don't have any further questions, but you can certainly. Yeah, I think, obviously, Your Honors, I think we've flushed out the main issue, so I will rest on that. Very interesting. Thank you all. Thank you. May it please the Court, Counsel. The bank's position on the effect of the August 22nd, 2022 notice both assumes that the reference to the August 26th, 2013 date is meaningless and is mathematically wrong. The amount sued upon, late 2023, is $99,973.28. The amount in the August 22nd, 2022 letter is the same, $99,973.28. The letter also states that no interest, no fees, nothing is being added to the amount due. Mr. Zabrazek states in his affidavit, which is at A33, that no payments were made on this account after June 1st, 2013. Well, if the endpoint is $99,973.28, and for a period of more than 10 years, there are no additions or subtractions from that amount, the amount due on August 26th, 2013 is, of necessity, $99,973.28. So, Mr. Edelman, do letters sent by a creditor take precedence over the original agreement and the original mortgage? In this case... Because you're, I think you're trying to argue an acceleration here. And how can you accelerate something that's in the past? You can't, with an August 22nd, 2022 letter, accelerate something back to August 26th of 2013. Given the amounts involved, acceleration is superfluous. The amount claimed in 2013 is identical to the amount sued upon more than 10 years later. That means that the bank had, the only amount it could have sued for in 2013 is the $99,973.28, and it waited more than 10 years, allowing the longest possible statute to run. The... This is basically a credit card secured by one's home. The concept of acceleration on an open-end line of credit with these terms is fairly superfluous. Here's why. There are no installments. This instrument does not meet the statutory definition of a note. A note requires something that is payable, a fixed amount of money payable on demand or at a definite time. But isn't this loan secured by mortgage? Therefore, doesn't that, sort of by implication, makes the credit line agreement a note? No. A note is defined by statute 3104 of the Uniform Commercial Code. If something, you can have something secured by real estate that is not a note. An installment contract, various types of instruments can be secured by real estate, but are not notes. A note requires a promise to pay a fixed amount of money. A line of credit has repeatedly been held not to be a fixed amount of money, and it has to be payable on demand or at a definite time. 3108, then, says that something is payable at a definite time. I'm sorry, I didn't mean to interrupt you, but isn't that what we have here, though? I mean, you have payments that are supposed to be made under the agreement, and they're secured by a piece of paper?  No? What the agreement says is that the borrower will pay the interest. The rates and amounts vary depending on prevailing rates and the amount of use made of the line of credit. So we'll bill you 119 months. You pay what's on the bill. You only have to pay interest. That's what we'll charge you. Payments of principle, in addition to that, are optional with the borrower. In this case, there's no interest, no bills, no statements were sent, and nothing was due on the installments other than the principle. There are no installments. Installment comes from the UCC. 3108 says that a note is payable at a definite time or times, plural. So you can have a note, the fixed payment can be 360 fixed payments, schedule set forth in the instrument. We don't have that here. Well, let me ask you this. In the instrument, there is a provision that says delay enforcement, which means that the bank doesn't waive its right, and it's clearly stated there. It doesn't waive its right if you miss a payment and they don't come after you for it, right? They don't waive their right to do it at a later date. So doesn't that kind of imply that there is an installment process here because they're saying, you know, we can determine when we're going to come after you, and if you don't make the payment, we'll waive our rights going after you. That type of language has never been construed as a waiver of the statute of limitations. No, I'm not talking about the statute of limitations. So you're saying that this isn't like a regular mortgage in terms of payments don't have to be made, et cetera, right? I mean, if I understand your argument. That is correct. You only have to pay interest. Right. But in the document here, there is a delayed enforcement provision, which allows the bank at any time if a payment is missed to not go after it, and don't collect on that payment, but they're not waiving their right later on if they want to. They still have to comply with the statute of limitations. That's not my question. That's not my issue here. I think it is. What you're saying is that if, let's assume that the principal due in 2013 is $99,973.28, the bank does not have to sue you immediately. Right. Does that mean that the bank can sue you 40 years later? No. It is still subject to the statute of limitations. Well, they can sue you after the balloon comes through. That whole amount is not what, okay, so let's just say BMO, for whatever reason, you know, they didn't produce the monthly statements in discovery. It sounds like they did not. We don't know for sure. Maybe they just screwed up and forgot to bill their client for the finance charges each month, because this is an installment. They could have gone after your client each time an installment was missed. That's pretty expensive to be suing on a small amount, so they opt to wait until the balloon is due. That's the full almost $100,000, right? Because wasn't August 26, 2013, just the accrual of the statute of limitations for that missed payment of the finance charge? No. No, Your Honor. Well, you cite to the Mangluvit case, which is your case, right, Mr. Edelman? That is correct, Your Honor. You cite to that for its holding that a five-year statute of limitations applies to this case. But the Mangluvit case makes clear that, quote, the default on one installment payment doesn't start the statute of limitations as to all future installments unless the creditor exercises the option to accelerate following the default. Here it was permissive, and they chose not to, maybe for the reasons I previously cited. And also, quote, when a debt instrument like the one here has a maturity date, it has one, right, and that maturity date is in August, I mean, I'm sorry, in February of 2018. Under Illinois law, this is the federal court following Illinois law, the statute of limitation begins to run at the maturity date, not at the time of the first default. That's your case. That is correct. And under it, I win because the statute is five years. The maturity date is February 22, 2018. But you don't win for the purposes I just cited with respect to when the statute kicks in. I think that given the fact that no interest was charged in this case, and the reason, although it's not developed, is that Truth in Lending gives the bank the option of either sending statements or not charging interest. They opted not to charge interest. But if the amount due in August 2013 is the same $99,973.28 that was ultimately sued upon, and no installments of interest were even charged or requested, then they would have 10 years maximum from August 26, 2013 to sue. That wouldn't follow the holding of your case in the federal court. Because that was just an installment payment that should have been made had they requested it, and they didn't accelerate. The whole language is permissive language. It's at their option. Except here there were no ones. Interest was not charged, even though no payments were made after June of 2013. But they didn't have to charge interest, did they? That's correct. But your client owed, pursuant to the written agreement, your client owned that full amount when the balloon came due at the maturity date. That is correct. And he also owed that identical amount in August 2013. Because the only thing at issue is his principal. Because he's taken out that amount, but he didn't owe it. It wasn't due to be repaid until the balloon was due. I disagree with that. Consider this similar to a credit card. A credit card becomes due when it's subject to a five-year statute when you default. You don't make a payment. They have five years from default, your last payment, to file suit. I submit this works, whether it's a five-year or ten-year statute, the same way, and that either the bank's case is barred if you measure either ten years from August of 2013 or five years from February of 2018. Installment is also provided for in the UCC. It requires its 3108. And because the fixed amount of money can be payable at a multiplicity of definite times, you can have a schedule of installments. But if all you have is we'll send you a bill and you'll pay the bill, and the bill is interest only and we're not charging any interest, the concept of installments, I think, does not work. Let me ask a question about acceleration. So this is before the circuit court on a motion to dismiss. So the question is, if BMO accelerated on the agreement, okay, isn't that a factual question that maybe should be resolved later on in the proceedings and not at the motion to dismiss stage? Well, BMO, bear in mind, did not file any counteraffidavit. They knew what the status of the account was in the fall of 2013. They filed nothing. Supreme Court Rule 113 requires them in a foreclosure to have a payment history. They didn't provide one. We asked them for this in discovery. They didn't comply. So I think that given the fact that nothing in response was filed which disputed the inferences which can be drawn from the August 2022 notice, the bank, there is no factual question. The bank should have raised that and didn't. Let me briefly respond to the hypothetical that counsel referred to. That was not my case, and it's based on a false premise, namely, that the length of a writing means that you satisfy 13-206. Actually, the opposite is true. A negotiable instrument such as a note is sometimes referred to as a courier without baggage. It's very simple, very direct, and doesn't contain a whole bunch of options, contingencies, provisions for changes in terms. This one does under some circumstances and the like. It doesn't provide for a replenishing open-end line of credit. So the inference to be drawn is actually the opposite. Many credit card agreements are very long, typically 10 pages, 12 pages. And the reason for the length is that they provide for all sorts of contingencies. And the reason that credit cards don't qualify as a contract in writing is that it is not possible to determine from the writing what the status of the account is. So the length detracts from the characterization as a writing. The inference that counsel draws is the opposite of what I think the law provides. So that either under the five-year statute measured from not later than February 2018 or the 10-year statute measured from August of 2013, the case was properly dismissed. So you referred to it just briefly as a note. So is this a note or is it not a note? It is not a note. So let me ask you first what is a note. I understand why you filed a 2619, all right? But considering that it's not a note and that we really don't have a foreclosure action here, shouldn't it have been a 2615, get it out of Chancery and then move it down to the Law Division? If they're seeking the property, I think it is properly in Chancery, even if the credit agreement is not a note. But it's not a foreclosure. It is a foreclosure. If there's no note, there's no foreclosure. I would disagree with that. Do you have any authority to that? Because you're the one that's saying that this is not a note. Well, it's not a note because it doesn't meet the UCC definition of negotiable instrument and note. But in a foreclosure action, you need a note. You can't proceed in a foreclosure without a note. The Foreclosure Act itself refers to certain contracts to purchase real estate, time, in effect, a retail installment contract for the purchase of real estate. So I would disagree. I don't think you need a note as defined in the UCC to have a foreclosure action. But this document that both of you entered into is not listed under the statute in terms of the type of agreement that could be brought for lack of payment in a foreclosure action, right? I mean, I think you're right. So where do we go? If we were to remand this, where do we remand it to? What Your Honor is saying is that the remedy of foreclosure is not open to them. It's an argument, which I did not raise below, that they're stuck with suing for money. So, yes, it would go to the Law Division. Unless you have some other questions, that's what I have to say. Thank you so much. Thank you. Counsel Rebo. Thank you, Your Honor. So just to try and reply directly to a couple of those issues, the first is counsel made reference a couple of times to the amount claimed in 2013 and the amount due in 2013. There's no evidence of what was claimed or due in 2013. All we have is a letter from 2022. So I just want to try and make clear that there's no evidence as to what the bank sought in 2013. None. So to this argument that while the amount, no, the 99,000, which is in the complaint, is the same amount that was sought in 2013, there's no evidence that it was sought in 2013. Maybe the bank could have sought that in 2013 if it had accelerated the loan, but there's no evidence that it did. So I think that entire argument that the bank sought something in 2013 is false. The right that the bank had in 2013, assuming there was a missed installment, was to sue on that missed installment. $400 you missed? I'm going to sue you for $400. Apparently the bank didn't do that. If it did, nobody here knows about it. So I think that argument is wrong. The other thing I wanted to address is this likening a HELOC to a credit card. And counsel argued that, you know, they're both open-end agreements. This is not an open-end agreement. This is a closed-end agreement because it has a maturity date. It ends. Unlike a credit card, which can go on forever. The other thing that's critical is the way these loans are created are completely different. Right? You've got an individual who wants a credit card, sends it an application. You know, this is my name. This is what I do. This is how much I make. The lender then looks at the application and says, oh, yeah, you qualify for a credit card. Here's a credit card with some terms and conditions. At that moment, there's still not a contract that's been formed. The law says, I don't know what that relationship is, but it's not a contractual one. The contractual agreement starts when the credit card is swiped. That's when whatever the relationship is starts and the contract, which I guess is the terms and conditions of the credit card, are put into play. The HELOC is not that at all. It's completely different. It is a four- or five-page document that the homeowner, in this case, gets to look at. They get to read. They get to understand. They get to see an attorney if they want one. And then they sign it. And they know the terms and conditions from the get-go. So I just don't like the comparison between a HELOC and a credit card because the relationship between the parties is completely different. And, yes, there's that similarity that you can pay it down, just like a credit card, and then borrow some more. That's really the only similarity between the two types of loans. But the critical one in my client's estimation is that when you sign the document, you know its terms, and you know what you're signing up for, which is if you borrow some money, you're going to pay it monthly until the loan matures, and then you're going to pay everything. And you shouldn't be allowed to say, well, you know, I don't know the exact amount that I have to pay this month, and therefore all of a sudden this is an oral agreement. I don't think that follows, in my opinion, or my client's opinion. The last issue I wanted to raise is the bank's failure to file a counter-affidavit to the 619 motion. But the issue is a legal issue, which is was the loan accelerated on August 26th of 2013? You don't have to file counter-affidavits for legal issues. So I guess my client could have filed an affidavit saying, we didn't accelerate anything. I think the fact is that on a 619, it's the defendant's burden to put forth what needs to be put forth in order for the motion to be granted, and all they've done is say, I didn't make any payments since 2013, and here's a letter from 2022. Well, that's not evidence of anything the bank did in 2013, and therefore there's nothing that the bank should have needed to do in terms of a counter-affidavit. So on the issue of acceleration, the same question I asked counsel here, is the fact, it's a fact question, right? Did the bank accelerate or did it not? I mean, should it have been disposed in a motion to dismiss, or should it be disposed of later on in the proceedings? I think it can be disposed of at summary judgment. So I think at a 619, it was, yeah, certainly it's a question of fact. It's probably not proper for a 619. It's probably appropriate for summary judgment, I would think, after discovery. And again, I've been thrown under the bus a couple times, and my client didn't answer discovery. I mean, they issued discovery day one of the case when the 619 was pending. So, you know, I don't find that overly relevant to the merits of the case. But I think to answer Your Honor's question, whether something was accelerated, yeah, for sure, that's a question of fact. Absolutely. And just to follow up, I don't think a letter in 2022 resolves that question of fact, in my opinion. That is all I have for today. Thank you. Thank you, Your Honor. I have to say this is very interesting, very interesting. I think my colleagues would agree. We are certainly going to give this our due consideration, and a resolution will be forthcoming hopefully sooner than later. Thank you. Thank you. And we are adjourned.